Gibson, J.,
concurring. I concur in the judgment on the basis that the hospital, a corporation, may not lawfully engage in the practice of medicine or osteopathy. Chapter 4731, Revised Code, concerning the State Medical Board and its authority over physicians and limited practitioners, plainly provides that individuals only may be licensed to engage in the practice of medicine or osteopathy. I am informed that this state has never licensed a hospital corporation to practice medicine or osteopathy. It is to be presumed, in the absence of a claim and evidence to the contrary, that this hospital was not unlawfully practicing medicine or osteopathy. Hence, notwithstanding the fact that the cause has been treated by the parties and the lower courts as one in malpractice, the action, having been commenced on February 16, 1957, a date within two years after the negli *137 gent reading of the biopsy slide in April 1955, is not barred by Section 2305.10, Revised Code.
In my opinion it is unnecessary for the court to discuss the statute of limitations respecting malpractice. After having read the prior decisions of this court, which are referred to in the majority opinion, in my view, there is no justification for extending the doctrine of DeLong v. Campbell, Exxx. (1952), 157 Ohio St., 22, beyond the relationship of physician to patient to the relationship of hospital to patient.
Since the majority opinion in this case does discuss the rule for computing the period of limitation for the commencement of a malpractice action, I believe it is pertinent to note that had I been a member of this court when the DeLong case was decided I would have agreed with dissenting opinion of Middleton, J. Apparently, California, Florida, Louisiana, Pennsylvania, Texas and New Jersey courts, under statutes substantially like ours, have ruled that the statute of limitations does not begin running until the patient discovers or, in the exercise of reasonable diligence, should have discovered the injury. The same result has been reached in Alabama, Connecticut and Missouri by legislative action. Lillich, The Malpractice Statute of Limitations in New York and other Jurisdictions (1962), 47 Cornell Law Quarterly, 339, 358. See, also, The Forgotten Sponge and the Statute of Limitations (1961), 1 Washburn Law Review, 257, 265; Malpractice and the Statute of Limitations (1957), 32 Indiana Law Journal, 528; and annotation, 80 A. L. R. (2d), 368.
In this and similar situations, the patient does not know and in most cases the physician does not know that the patient has any basis for a cause of action until, for instance, the error in diagnosis or the surgical operative procedure or treatment is discovered by another doctor. In most cases the second doctor discovers the malpractice through X-ray or another operation. To say that the patient had a cause of action all the while, although no one knew about it or suspected it, may meet the tests of some legal theory, but the result hardly meets the standards of justice or logic.
The practical effect of a holding that the statute of limitations (Section 2305.11, Revised Code) begins to run in case of malpractice at any time before the patient discovers or, in the *138 exercise of reasonable diligence, should have discovered the injury requires the legally prudent patient to consult another physician promptly after any medical treatment or surgery for a check on the procedures followed and judgments made by the physician upon whom he relied initially. Even if it were always possible to secure the services of a physician to check the work of another, such a practice would undermine the professional relationship between the physician and his patient, which in many cases is as important to the health of the patient as the medical or surgical treatment administered.